UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA MARIA G., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No.: 20cv0641-RBB <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 13]** |

On April 1, 2020, Plaintiff Anna G.[1] commenced this action against Defendant Andrew Saul, Commissioner of Social Security, for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for disability insurance benefits and supplemental security income [ECF No. 1]. On April 22, 2020, Plaintiff consented to the jurisdiction

---

[1] The Court refers to Plaintiff using only her first name and last initial pursuant to the Court's Civil Local Rules. See S.D. Cal. Civ. R. 7.1(e)(6)(b).

1

of this Court [ECF No. 8].[2]  Defendant filed the administrative record on October 29, 2020 [ECF No. 11].  On November 30, 2020, Plaintiff filed a Motion for Summary Judgment [ECF No. 13].  Defendant filed an Opposition to Plaintiff's Motion for Summary Judgment on January 7, 2021 [ECF No. 15].  Plaintiff filed a Reply on January 13, 2021 [ECF No. 16].

        For the following reasons, Plaintiff's Motion for Summary Judgment is **DENIED**.

## I.    BACKGROUND

Plaintiff Anna G. was born in 1962 and earned a General Educational Development certificate in 1978. (Admin. R. 176, 210, ECF No. 11.)[3]  She previously worked as a registration clerk for the Department of Motor Vehicles ("DMV") and as a receptionist for an insurance company.  (Id. at 49-51, 59-60.)  On or about June 21, 2016, Anna G. filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, respectively.  (Id. at 176-84.)  She alleged that she had been disabled since October 6, 2006, due to back injury, neck injury, depression, anxiety, and lack of sleep.  (Id. at 209.)[4]  Plaintiff's applications were denied on initial review and again on reconsideration.  (Id. at 135-39, 142-51.)  An administrative hearing was conducted on January 24, 2019, by Administrative Law Judge ("ALJ") Louis M. Catanese; on March 8, 2019, he issued a decision finding Plaintiff not disabled.  (Id. at 16-30.)  Plaintiff requested a review of the ALJ's decision; the Appeals

---

[2] The United States has informed the Court of its general consent to Magistrate Judge jurisdiction in cases of this nature.

[3] The administrative record is filed on the Court's docket as multiple attachments.  The Court will cite to the administrative record using the page references contained on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court cites to the page numbers affixed by CM/ECF.

[4] Plaintiff amended her onset date to March 30, 2015, during the administrative hearing.  (Admin. R. 39, 176, ECF No. 11.)

Council denied the request on February 5, 2020. (Id. at 1-4.) Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

## A. Medical History

Anna G. has a history of chronic lumbar pain and lumbar radiculopathy. (Id. at 1459.) She sustained a work injury on October 11, 2006, and underwent anterior posterior L5-S1 fusion surgery with Dr. Robert J. Jackson on October 6, 2008, after receiving extensive conservative treatment. (Id. at 1093, 1423.) On February 4, 2013, Wesley M. Nottage, M.D., the primary treating physician for Plaintiff's worker's compensation claim, noted that Plaintiff had continuing back discomfort but had returned to her job at the DMV. (Id. at 1423-26.) On July 24, 2013, Anna G. advised her pain management clinician that her low back and left leg pain had increased, possibly due to prolonged sitting at work. (Id. at 1033-34.) A lumber MRI taken on November 25, 2014, showed postoperative change at the L5-S1 level with a complete fusion and degenerative changes and mild stenosis at L4-L5. (Id. at 1420.) On March 31, 2015, Plaintiff returned to Dr. Nottage for a reevaluation; he referred her back to her surgeon, Dr. Jackson, and advised her to continue seeing Dr. Standiford Helm for pain management. (Id. at 1420-21.) Anna G. saw Dr. Jackson on June 3, 2015; he recommended surgery at the L4-L5 level, noting that Anna G. had undergone approximately thirteen epidural steroid injections and six sessions of physical therapy without improvement and was taking four to five Norco a day for pain control. (Id. at 396-97.) On July 29, 2015, the surgeon proceeded with hemilaminectomies, foraminotomies, and fusion with instrumentation at L4-L5. (Id. at 402.) On December 18, 2015, Dr. Jackson recommended that Plaintiff continue working part-time for an additional two months, but she was cleared to return to full-time work starting March 1, 2016. (Id. at 391.)

On January 5, 2016, Dr. Nottage, the primary treating physician, reevaluated Anna G.'s condition. (Id. at 1411.) Plaintiff had completed post-operative physical therapy

and was on a walking and self-directed exercise program for her low back. (Id.) She told the doctor that she had tenderness and stiffness in her neck. (Id.) Cervical x-rays showed normal cervical lordosis and minimal degenerative changes. (Id. at 1408.) In the following months, she described her neck as "somewhat tight and sore" and "achy" but not painful. (Id. at 1402, 1406, 1408.) On June 15, 2016, one year after her surgery at L4-L5, Plaintiff reported to Dr. Jackson that the radicular symptoms down her left leg had dramatically improved since the surgery but she continued to have persistent intermittent back and leg pain. (Id. at 1465.) She informed the surgeon that she had been unable to return to work. (Id.) In the months following, Dr. Nottage progressively extended Plaintiff's temporary total disability until December 15, 2016. (Id. at 1393, 1395, 1397, 1400.) During this period, Anna G. underwent a spinal cord stimulation procedure, which reportedly caused her pain to increase, and continued taking medications including Norco for pain relief, Gabapentin for leg pain, Elavil for depression, and Trazodone for sleep. (Id. at 1273, 1278, 1346.)

On June 29, 2017, Dr. Nottage prepared the report upon which Plaintiff's current claim rests. (Id. at 1474-77.) The physician diagnosed Anna G. with cervical myofascial strain superimposed on cervical degenerative disc disease, and lumbar strain with history of lumbar fusion surgeries at L4-L5 and L5-S1 with intermittent left radiculopathy. (Id. at 1475.) He indicated that Plaintiff continued to have symptoms for which he had no further treatment recommendations other than pain management. (Id.) Dr. Nottage noted that his patient's neck discomfort was "an aching, tightness, and stiffness . . . characterized as minimal to slight and intermittent" and her low back pain was "aching in character with intermittent radiation in the left leg characterized [as] slight to moderate and frequent." (Id.) With respect to Anna G.'s work capacity, he opined: "The patient's lumbar spine precludes prolonged sitting, repetitive bending or stooping and lifting over

10 pounds. The cervical spine precludes prolonged overhead gazing and repetitive neck motions." (Id.)

**B.    ALJ's Decision**

On March 8, 2019, the ALJ issued a decision finding that Anna G. was not disabled. (Id. at 16-30.) Judge Catanese determined that Plaintiff had not engaged in substantial gainful activity since March 30, 2015, her amended alleged onset date. (Id. at 19.) He found that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine and obesity. (Id. at 19.) He also found that, singly or in combination, Plaintiff did not have impairments that met or medically equaled a listed impairment. (Id. at 22.) The ALJ further determined that Anna G. had the residual functional capacity to perform sedentary work, with additional specified limitations, including alternating between sitting and standing in increments of every twenty minutes while in proximity to a desk or worksite. (Id. at 22.) The ALJ concluded that Plaintiff was capable of performing her past relevant work as a registration clerk and receptionist, and had not been under a disability from March 30, 2015, through the date of his decision. (Id. at 29-30.)

## II.    LEGAL STANDARDS

Sections 405(g) and 421(d) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C.A. §§ 405(g), 421(d) (West 2011). The scope of judicial review is limited, however, and the denial of benefits "'will be disturbed only if it is not supported by substantial evidence or is based on legal error.'" Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)); see also Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); see also Biestek v. Berryhill, ___ U.S. ___, ___, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions. Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020). The district court may affirm, modify, or reverse the Commissioner's decision. 42 U.S.C.A. § 405(g). The matter may also be remanded to the Social Security Administration for further proceedings. Id.

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) The applicant suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. See 42 U.S.C.A. §§ 423(d)(1)(A), (2)(A) (West 2011). An applicant must meet both requirements to be classified as "disabled." Id. The applicant bears the burden of proving he or she was either permanently disabled or subject to a condition which became so severe as to disable the applicant prior to the date upon which his or her disability insured status expired. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

The Commissioner makes this assessment by employing a five-step analysis outlined in 20 C.F.R. § 404.1520. See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps). First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b) (2019). Second, the Commissioner determines whether the

claimant has a "severe impairment or combination of impairments" that significantly limits the claimant's physical or mental ability to do basic work activities. If not, the claimant is not disabled. Id. § 404.1520(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded. Id. § 404.1520(d). If not, the claimant's residual functional capacity is assessed and the evaluation proceeds to step four. Id. § 404.1520(e). Fourth, the Commissioner determines whether the claimant can do his or her past relevant work. If the claimant can do their past work, benefits are denied. Id. § 404.1520(f). If the claimant cannot perform his or her past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Id. § 404.1520(g). If the Commissioner meets this burden and proves that the claimant is able to perform other work that exists in the national economy, benefits are denied. Id.

### III.   DISCUSSION

Plaintiff's sole argument is that the ALJ erred by failing to address the line in Dr. Nottage's June 29, 2017 report indicating that Anna G. was precluded from "prolonged overhead gazing and repetitive neck motions." (Pl.'s Mot. Attach. #1 Mem. P. & A. 7-8, ECF No. 13, citing Admin. R. 1475, ECF No. 11.) She maintains that this failure constituted an impermissible rejection of Dr. Nottage's opinion. (Id.) Defendant contends that Anna G.'s argument is meritless. (Def.'s Opp'n 4, ECF No. 15.)

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). An ALJ is not required to accept the opinions of any physician, including a treating physician, that are "unsupported by the record as a whole

. . . or by objective medical findings." Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (citing Tonapetyan, 242 F.3d at 1149); see also Ford, 950 F.3d at 1154 ("The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings."). In this case, the ALJ gave "little weight" to Dr. Nottage's opinions. (Admin. R. 27, ECF No. 11.) He found the doctor's opinions were not supported by the overall evidence and were inconsistent with Plaintiff's activities. (Id.) Judge Catanese did, however, find evidentiary support for Dr. Nottage's June 29, 2017 opinion that Plaintiff's lumbar spine condition impacted her ability to work and "precludes prolonged sitting, repetitive bending or stooping and lifting over 10 pounds." (Id.) The ALJ accordingly gave "some weight" to this portion of Dr. Nottage's opinion and incorporated the lumbar restrictions into Plaintiff's residual functional capacity, in which he determined that Anna G. was limited to sedentary work, could perform postural activities on only an occasional basis, and would need to alternate between sitting and standing every twenty minutes. (Id.; see also id. at 22.)

     Plaintiff correctly observes that the ALJ's decision is silent regarding Dr. Nottage's opinion concerning Anna G.'s neck restrictions; that is, her "cervical spine precludes prolonged overhead gazing and repetitive neck motions." (Pl.'s Mot. Attach. #1 Mem. P. & A. 7 ECF No. 13, citing Admin. R. 1475, ECF No. 11.) An ALJ does not err, however, by failing to discuss each and every limitation suggested by a medical opinion. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). Rather, the ALJ is required to discuss only those medical opinions, or aspects thereof, that are significant and probative of a claimant's functional limitations. See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984); Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012). The failure to discuss specific evidence does not indicate that the evidence was not considered. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).

It is clear from the ALJ's decision that he reviewed and considered Dr. Nottage's June 29, 2017 findings as he specifically cited to and discussed the report. (Admin. R. 27, ECF No. 11.) As discussed above, he gave "some weight" to the portion of the opinion relating to functional limitations caused by Plaintiff's lumbar condition. (Id.) Based on the evidence in the record, the ALJ could determine that Dr. Nottage's opinion regarding Plaintiff's neck restrictions did not warrant discussion because it was not significant or probative of her ability to work. At the administrative hearing, for example, Anna G. testified that back and left leg pain affected her ability to work. (Id. at 51-52.) She made no mention of any functional limitations caused by neck symptoms. Similarly, none of Plaintiff's disability forms indicated that her neck condition impacted her work ability. (See id. at 241 (function report completed by Anna G. stating that she could not sit for very long but containing no reference to any neck problems); 263 (disability report explaining "unbearable" back and leg pain prevented her from working).) Plaintiff's neck x-rays showed normal cervical lordosis and minimal degenerative changes. (Id. at 1408.) She described her neck discomfort to Dr. Nottage as "an aching, tightness, and stiffness" and stated that it was only "minimal to slight and intermittent." (Id. at 1402, 1406, 1475; see also id. at 1408 ("neck does not produce pain").) The ALJ could properly give little credence to a medical opinion that was not consistent with the record as a whole. Batson, 359 F.3d at 1195; see also 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Given the lack of evidence in the record that Plaintiff's neck condition was significant or probative of her ability to work, the ALJ did not err by failing to discuss it. See Vincent, 739 F.2d at 1395; Hiler, 687 F.3d at 1212.

Plaintiff has not demonstrated that the ALJ committed legal error with respect to his evaluation of Dr. Nottage's opinion, and the Court concludes that the ALJ's decision

was supported by substantial evidence in the record.  Accordingly, the decision should be upheld.

### IV.   CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [ECF No. 13] is **DENIED**.

This Order concludes the litigation in this matter.  The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated:  April 27, 2021

Hon. Ruben B. Brooks
United States Magistrate Judge